## UNITED STATES COURT OF APPEALS
## FOR the EIGHTH CIRCUIT

In re:

23ANDME HOLDING CO., *et al.*,

             *Debtors*.

THE PEOPLE OF THE STATE OF CALIFORNIA,

             *Appellant*

    vs.

23ANDME HOLDING CO., *et al.*,

             *Appellees*

Appeal No. 25-2361

District Court Case No.: 4:25-cv-0099

Bkr. Case No. 25-40976-357

Chapter 11

## The People of the State of California's Emergency Motion for a Stay Pending Appeal

# Table of Contents

I.    Introduction ................................................................................1

II.   Factual and Procedural Background .....................................4

III.  Jurisdiction .................................................................6

IV.   Legal Standards ...............................................................6

V.    Argument......................................................................7

      A.   The People have a likelihood of success on the merits. .............8

            1.   The multi-step transaction, facilitated by the creation of a non-debtor entity, is an improper use of § 363. ...........................................................9

            2.   The Bankruptcy Court misapplied California law. ........12

      B.   Irreparable injury if the stay is denied. ....................................15

            1.   Irreparable Harm to California's Sovereign Interest......15

            2.   Irreparable Harm to California's Quasi-Sovereign Interest ................................................................16

            3.   Irreparable to the People's Appellate Rights.................17

      C.   Weighing the public interest and assessing harm to interested parties. ....................................................17

      D.   An appellate bond would be unnecessary and inappropriate. ..................................................19

VI.   Conclusion........................................................21

Appellate Case: 25-2361    Page: 2    Date Filed: 07/11/2025 Entry ID: 5536222

# Table of Authorities

**CASES**

*Abbott v. Perez*
    585 U.S. 579 (2018)...................................................................................3, 16

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*
    458 U.S. 592 (1982).................................................................................15, 16

*BBBB Bonding Corp. v. Caldwell*
    73 Cal. App. 5th 349 (2021) ........................................................................13

*Brady v. Nat'l Football League*
    640 F.3d 785 (8th Cir. 2011) .....................................................................7, 8

*Czyzewski v. Jevic Holding Corp.*
    580 U.S. 451 (2017)......................................................................................12

*Easter House v. State of Ill. Dep't of Child. & Fam. Servs.*
    645 F. Supp. 107 (N.D. Ill. 1986)..........................................................19, 20

*Fargo Women's Health Org. v. Schafer*
    18 F.3d 526 (8th Cir. 1994) ...........................................................................7

*Fox Valley & W. Ltd. v. I.C.C.*
    15 F.3d 641 (7th Cir. 1994) .........................................................................14

*FTC v. Mallett*
    818 F. Supp. 2d 142 (D.D.C. 2011)..............................................................18

*FTC v. World Wide Factors, Ltd.*
    882 F.2d 344 (9th Cir. 1989) .......................................................................17

*Gregory v. Helvering*
    293 U.S. 465 (1935)......................................................................................14

*Harrington v. Purdue Pharma L. P.*
    603 U.S. 204 (2024)..................................................................................9, 10

Appellate Case: 25-2361    Page: 3    Date Filed: 07/11/2025 Entry ID: 5536222

*In re Apex Oil Co.*
884 F.2d 343 (8th Cir. 1989) .................................................................6

*In re Channel One Commc'ns, Inc.*
117 B.R. 493 (Bankr. E.D. Mo. 1990).................................................9

*In re Gucci*
105 F.3d 837 (2d Cir. 1997) .................................................................3

*In re Gulf Coast Oil Corp.*
404 B.R. 407 (Bankr. S.D. Tex. 2009) ............................................10

*In re Lionel Corp.*
722 F.2d at 1069 .................................................................................11

*In re P.R.T.C., Inc.*
177 F.3d 774 (9th Cir. 1999) ...............................................................8

*In re Revel AC, Inc.*
802 F.3d 558 (3d Cir. 2015) ............................................................6, 8

*In re Schauer*
835 F.2d 1222 (8th Cir. 1987) .............................................................2

*In re Sindesmos Hellinikes-Kinotitos of Chicago*
607 B.R. 898 (Bankr. N.D. Ill. 2019) ...........................................19, 20

*In re St. Johnsbury Trucking Co., Inc.*
185 B.R. 687 (S.D.N.Y. 1995) ..........................................................17

*In re Stratford Hotel Co.*
120 B.R. 515 (E.D. Mo. 1990) .........................................................6, 7

*In re Trism, Inc.*
328 F.3d 1003 (8th Cir. 2003) .............................................................3

*In re Voyager Digital Holdings, Inc.*
No. 23-02171, 2023 WL 2731737 (S.D.N.Y. Apr. 1, 2023)..............18

*In re Wesco Aircraft Holdings, Inc.*
No. 23-90611, 2025 WL 354858 (Bankr. S.D. Tex. Jan. 15, 2025).  ...............13

Appellate Case: 25-2361     Page: 4     Date Filed: 07/11/2025 Entry ID: 5536222

*In re White Crane Trading Co., Inc.*
  170 B.R. 694 (Bankr. E.D. Cal. 1994)..................................................2

*Iowa Utils. Bd. v. FCC*
  109 F.3d 418 (8th Cir. 1996) ...........................................................8

*Kane v. Johns-Manville Corp.*
  843 F.2d 636 (2d Cir. 1988) ...........................................................8

*Kraft, Inc. v. County of Orange*
  219 Cal. App. 3d 1104 (1990) .......................................................13

*Nken v. Holder*
  556 U.S. 418 (2009).......................................................................7

*Norwest Bank Worthington v. Ahlers*
  485 U.S. 197 (1988)...................................................................2, 12

*Org. for Black Struggle v. Ashcroft*
  978 F.3d 603 (8th Cir. 2020) .....................................................4, 16

*Pavek v. Donald J. Trump for President, Inc.*
  967 F.3d 905 (8th Cir. 2020) .........................................................18

*People v. Hudson*
  38 Cal. 4th 1002 (2006) ................................................................13

*Sleep No. Corp. v. Young*
  33 F.4th 1012 (8th Cir. 2022) ..........................................................8

*United Farm Workers of Am., AFL-CIO v. Dutra Farms*
  83 Cal. App. 4th 1146 (2000) ........................................................14

**STATUTES**

11 U.S.C. § 363 .................................................................*passim*

11 USC § 1123(a)(5)(B) ...................................................................11

28 U.S.C. § 158(d)(1)...........................................................................6

Cal. Civ. Code § 56.18, et seq...........................................................1

Cal. Civ. Code § 56.181 ...................................................................12

Cal. Civ. Code § 56.181(a)(2)(D) ................................................................1

Cal. Civ. Code § 56.181(d)(2)(B) ...............................................................19

Cal. Civ. Code §§ 2223, 2224 ...................................................................16

2021 Cal. Legis. Serv. Chapter 596 ............................................................1

**RULES**

Fed. R. App. P. 27(d)(2) ............................................................................22

Fed. R. App. P. 32(a)(5) ............................................................................22

Fed. R. App. P. 32(a)(6) ............................................................................22

Fed. R. App. P. 32(f) .................................................................................22

Fed. R. Bankr. P. 8007 ..............................................................................19

Fed. R. Bankr. P. 2018(b) ...........................................................................8

# I. INTRODUCTION

The People of the State of California (People) respectfully submit that the U.S. District Court for the Eastern District of Missouri erred when it denied the People's motion for a stay pending appeal. The People thus request that this Court reverse the District Court's order and stay the sale of approximately 1.8 million Californians' genetic data and biological samples before 23andMe Debtors begin transferring these data and samples to TTAM Research Institute (TTAM). **The transfer is set to begin July 11, 2025, at 11:59 p.m. CT.**

In 2021, California enacted the Genetic Information Privacy Act (GIPA), specifically to safeguard Californians' "genetic data and biological samples." Cal. Civ. Code § 56.18, et seq. Genetic information, derived from human DNA, is among the most—if not most—highly sensitive personal data that an individual has. *See, e.g.*, 2021 Cal. Legis. Serv. Ch. 596 (S.B. 41). In GIPA, California sought to protect and empower its residents by imposing transfer and disclosure restrictions on this highly sensitive information. Specifically, GIPA requires that genetic-testing companies, like 23andMe, first get affected consumers' "separate and express consent" before "each transfer or disclosure of the consumer's genetic data or biological sample to a third party . . . ." Cal. Civ. Code § 56.181(a)(2)(D).

At the center of this appeal is Debtors' failure to comply with GIPA in its asset sale of 1.8 million Californians' genetic data and biological samples to

1

TTAM, indisputably a "third party" under GIPA. It is a bedrock principle of bankruptcy law that debtors must comply with state-law transfer restrictions when selling assets under § 363 of the Bankruptcy Code. *See, e.g.*, *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987) ("[T]rustee could not evade the restrictions on transfer because the estate takes property subject to the same restrictions that it had before the bankruptcy."). Here, the Bankruptcy Court approved a § 363 asset sale of 1.8 million Californians' genetic data and biological samples in contravention of GIPA. Debtors have refused to obtain "separate and express consent" required by GIPA because doing so would be too costly. However, "[b]ankruptcy does not grant the debtor a license to eliminate the marginal cost generated by compliance with valid state laws that constrain nonbankrupt competitors." *In re White Crane Trading Co., Inc.*, 170 B.R. 694, 702 (Bankr. E.D. Cal. 1994).

At every turn, the People have objected to Debtor's sale of Californians' genetic data and biological samples in violation of GIPA. The Bankruptcy Court's approval of the § 363 sale of these assets to TTAM has deprived 1.8 million Californians of their state-law privacy protections under GIPA. Debtors tout the "success" of their genetic-asset sale to TTAM; but even sincere "belie[fs] that . . . creditors would be better off" is not a basis to deviate from procedures "specified by the [Bankruptcy] Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207 (1988).

Appellate Case: 25-2361     Page: 8     Date Filed: 07/11/2025 Entry ID: 5536222

The People have appealed the Bankruptcy Court's sale-approval order. Section 363 includes a statutory mootness provision, *In re Trism, Inc.*, 328 F.3d 1003, 1006 (8th Cir. 2003) (§ 363(m) "prevent[s] the overturning of a completed sale, absent a stay"), which is necessarily driving the People's stay requests to the Bankruptcy Court [Ex M], District Court, and now this Court. *See In re Gucci*, 105 F.3d 837, 840 (2d Cir. 1997) ("It therefore becomes important for district judges to appreciate the special consequences of denying a stay of a bankruptcy sale, even a very brief stay to permit [the Circuit] Court time to consider whether it believes a stay pending appeal is warranted.").

The Bankruptcy Court and District Court abused their discretion in denying the People a temporary stay pending appeal limited to the genetic data and biological samples of Californians. All of the traditional stay factors sharply favor a stay here pending appeal. Critically, the Bankruptcy Court's Sale Order irreparably harms California's sovereign interest as a matter of law. The Sale Order immediately and manifestly interferes with the People's ability to enforce GIPA. If this sale transaction were occurring outside of bankruptcy, the People could and would exercise their law-enforcement authority to regulate it. Because of the Sale Order, the People are barred. The injury that results when a state cannot enforce its statutes is irreparable. *See, e.g.*, *Abbott v. Perez*, 585 U.S. 579, 603 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm

Appellate Case: 25-2361     Page: 9     Date Filed: 07/11/2025 Entry ID: 5536222

on the State . . . ."); *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) ("Prohibiting the State from enforcing a statute properly passed . . . would irreparably harm the State.").

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On March 23, 2025, the 23andMe companies filed bankruptcy. Debtors run a "direct-to-consumer genetic-testing business." [Ex A ("Op.") at 2.] In a "first day" motion, Debtors sought to sell substantially all assets under 11 U.S.C. § 363(c) and proposed bidding procedures. [Ex D.] The Bankruptcy Court approved modified bidding procedures. [Ex F.] After the auction, Debtors filed a notice that they selected a pharmaceutical company as the winning bidder, with TTAM as the backup bidder, with draft purchase agreements for both attached. [Ex G.] Debtors re-opened the auction to allow both entities to submit final bids. [Op. at 5; Ex. F.]

On June 9, the People and others objected to the proposed sale to the pharmaceutical company. [Ex. H.] The People objected as a creditor based on "prepetition misconduct, including in connection with a massive October 2023 data breach." [*Id.* at 1 n.1; *see* infra n.1.] Four days later, Debtors selected TTAM as the winning bidder and filed a new version of TTAM's asset purchase agreement, which added a brief description of an "Equity Toggle." [Ex. I, at 152–53.]

On June 14, Debtors delayed the sale hearing a day and exercised the

"Equity Toggle," ostensibly changing the immediate—but not ultimate—purchaser of genetic data and biological samples from TTAM to NewCo. [Ex J.] On June 16, the People filed a supplemental objection. [Ex K.] On June 17, Debtors filed their omnibus reply, providing a slightly longer description of the two-step transaction. [Ex K at 15–17.] A two-day evidentiary hearing followed on June 18 and 20.

On June 27, the Bankruptcy Court approved the sale. [Exs A, B, C.] The Bankruptcy Court shortened the bankruptcy rules' automatic 14 day stay of sale orders to 10 days. Thus, Debtors and TTAM were set to "consummate" the sale transaction "at any time after 11:59 p.m., prevailing Central Time, on Monday, July 7, 2025." [Ex C at 46.] Exhibit B to the Sale Order is a longer description of the two-step transaction. [*Id*. at 166–68.]

On July 3, the People filed their Notice of Appeal. [Bkr Dkt 932.] On July 4, the People filed a motion for stay pending appeal. [Ex M.] The Bankruptcy Court heard the People's stay motion on July 7 at 1:30 p.m. and denied the People's Motion. [Ex N.] In its oral bench ruling, available at Bkr Dkt 959 and Ex O, the Bankruptcy Court reasoned: (1) it did not believe the People made a strong showing of likelihood of prevailing on the merits; (2) assumed that mootness may be irreparable injury, but reasoned that any injury to consumers could be reparable; (3) a stay may risk closing the Debtor-TTAM deal; (4) the public interest favored closing the deal.

Appellate Case: 25-2361    Page: 11    Date Filed: 07/11/2025 Entry ID: 5536222

On July 7, the People filed an emergency motion for stay pending appeal with the District Court. The District Court granted an administrative stay and set an in-person hearing. [Ex P.] At the July 10 hearing, the District Court heard oral argument and denied the People's motion. The District Court also concluded that none of the factors favored granting the motion, substantially adopting the Bankruptcy Court's reasoning for denying the stay. [Ex Q.] The District Court continued the administrative stay through 11:59 p.m. on Friday, July 11, 2025, so the People may seek relief with this Court. [Ex R.]

## III.  JURISDICTION

This Court has appellate jurisdiction under 28 U.S.C. § 158(d)(1). The District Court's order is final. Because the Bankruptcy Court's Sale Order contained a § 363(m) good-faith finding, the District Court's denial of the People's stay request may render the appeal moot—this is sufficiently final for purposes of 28 U.S.C. § 158(d)(1). *See, e.g.*, *In re Revel AC, Inc.*, 802 F.3d 558, 567–71 (3d Cir. 2015) (finality viewed more pragmatically in bankruptcy appeals); *In re Apex Oil Co.*, 884 F.2d 343, 347 (8th Cir. 1989) (same).

## IV.  LEGAL STANDARDS

**Standard of Review.** This Court's review is for an abusive of discretion. *In re Stratford Hotel Co.*, 120 B.R. 515, 516 (E.D. Mo. 1990). "In determining

whether the [] court abused its discretion in denying the stay based on its assessment of the application of the[] four [stay] factors to the present case, this Court may review its legal conclusions *de novo,* but its factual conclusions must be upheld unless clearly erroneous." *Id.* at 517 (citing *In re Apex Oil Co.*, 884 F.2d at 343).

**Stay Factors**. Four factors are relevant to a request for a stay pending appeal: (1) likelihood of success on the merits; (2) irreparable injury; (3) substantive harm to other interested parties; and (4) the public interest. *Fargo Women's Health Org. v. Schafer*, 18 F.3d 526, 538 (8th Cir. 1994). "The most important factor is the appellant's likelihood of success on the merits." *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011). Ultimately, however, this Court "must consider the relative strength of the four factors, balancing them all." *Id.* (quotation marks and citation omitted).

## V.   ARGUMENT

The People seek a limited stay to maintain the status quo as to only affected California consumers to ensure that the "legality" of Debtors' sale transactions authorized under § 363 can be "conclusively determined" on appeal. *Nken v. Holder*, 556 U.S. 418, 428–29 (2009).

## A.    The People have a likelihood of success on the merits.

To establish this prong, "absolute certainty of success" is not required. *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 423 (8th Cir. 1996). "Serious doubts" are enough. *Brady*, 640 F.3d at 792; *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) ("fair chance of prevailing" is enough). A stay proponent need only make a sufficient showing—better than negligible but not greater than a 50% chance. *In re Revel AC, Inc.*, 802 F.3d at 571; *Sleep No. Corp.*, 33 F.4th at 1016.

On the merits, the Bankruptcy Court found that "California has a chance of success. . . . [A]n appellate court will review that issue de novo and might agree with the state. I can't rule that out, and that's not my call to make."[1] [Ex O at

---

[1] The Bankruptcy Court and District Court both expressed concern about the People's standing to appeal. The People are indisputably a creditor in this bankruptcy case based on civil law-enforcement claims against 23andMe for fines and penalties arising out of a massive 2023 data breach. Therefore, the People's standing to object to and appeal bankruptcy sale orders is well established. *See, e.g.*, *In re P.R.T.C., Inc.*, 177 F.3d 774, 778 (9th Cir. 1999); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 638 (2d Cir. 1988). Moreover, as discussed below the People's sovereign and quasi-sovereign interests are injured by the Bankruptcy Court's Sale Order, and thus the People's Article III standing is beyond question. Finally, the Bankruptcy and District Courts suggested that the People's standing might be limited by Fed. R. Bankr. P. 2018(b) (allowing a state attorney general to "intervene" on "behalf of consumer creditors if the court determines that the appearance is in the public interest"). Given the People's creditor status, the People never had cause to intervene under Rule 2018(b), and accordingly, no court was ever called upon to make the requisite 2018(b) "public interest" determination. The Bankruptcy and District Courts' sua sponte invocation of Rule 2018(b) to limit the People's appellate rights is entirely without basis. The People have objected and appealed in their creditor capacity in innumerable cases, most recently in

78:1:–6.] The People agree: they have a much greater than "negligible" probability of prevailing on at least two merits issues on appeal: (1) the multi-step transfer of assets and equity, accomplished only through the formation of a non-debtor entity, is an improper use of § 363; and (2) the Court misapplied the plain terms of California's genetic-privacy law.

### 1. The multi-step transaction, facilitated by the creation of a non-debtor entity, is an improper use of § 363.

Debtors have repeatedly made clear the purpose of this bankruptcy case is to sell assets: "Debtors commenced these chapter 11 cases to effectuate a value-maximizing sale of substantially all or a portion of their assets . . . ." [Ex D at 5.] To accomplish this, Debtors sought and obtained first-day orders to sell substantially all their assets—including vast amounts of genetic data and biological samples—through § 363 of the Bankruptcy Code. While a "sale of substantially all of the Debtor's assets other than in the ordinary course of business and without the structure of a Chapter 11 Disclosure Statement and Plan is not prohibited by the Bankruptcy Code[,]" *In re Channel One Commc'ns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990), "the sale must be closely scrutinized, and the proponent bears a heightened burden of proving the elements necessary for authorization." *Id.* Notably, there are no wasting assets being sold here that would necessitate a § 363

_____

*Harrington v. Purdue Pharma L. P.*, 603 U.S. 204 (2024). The People's standing to do so has never been challenged or even questioned.

9

sale. *See, e.g.*, *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 423 (Bankr. S.D. Tex. 2009) ("Disposition of perishable assets is the archetype justification for a § 363(b) sale. Similar to the need to sell 'perishable assets' is the need for a quick sale to avoid adverse, but looming, market or business conditions.").

Here, the transaction approved by the Bankruptcy Court is a far cry from the sale contemplated by Debtors even just a few days before the sale hearing commenced. In the end, the Debtors' simple asset "sale" requires that (1) Debtors create a new non-debtor entity, "NewCo," subject to various conditions; (2) Debtors "effectuate intercompany transfers" of assets and liabilities among themselves; (3) Debtors invoke § 363 to sell genetic data and biological samples (free and clear) and transfer some liabilities to NewCo in exchange for an illusory promissory note that no one likely will ever repay; (4) Debtors invoke § 363 again to sell its equity in NewCo (free and clear) to TTAM in exchange for $305 million. [*See* Ex C at 167–68 (Exhibit B: Equity Sale Steps Plan).]

Debtors call this a "§ 363 sale." [Ex L; also Bkr Dkt No. 776 (TTAM reply).] "But word games cannot obscure the underlying reality." *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 223 (2024). This transaction is outside the bounds of what can be accomplished through § 363. This looks like, and accomplishes, a complex corporate transaction that can be effectuated only through a Chapter 11 plan of reorganization: after internally reorganizing their assets and

liabilities, Debtors are simultaneously selling assets and equity free and clear, leading to a going-concern reorganization and transfer of Debtors to their co-founder and former CEO. The creation of non-debtor entities to effectuate a bankruptcy transaction is expressly authorized under the Chapter 11's plan-implementation provisions—there is no express authority to do so under § 363. *See* 11 USC § 1123(a)(5)(B) ("[A] plan shall . . . provide adequate means for the plan's implementation, such as . . . transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan . . . .").

Indeed, the Bankruptcy Court repeatedly suggested that this exact structure could be accomplished through a Chapter 11 plan—just at a monetary cost. [Ex A at 6, 17–18, 19, 38.] But § 363 does not grant "*carte blanche*" to swallow up Chapter 11's safeguards. *In re Lionel Corp.*, 722 F.2d at 1069; *id*. at 1071 ("As the Supreme Court has noted, it is easy to sympathize with the desire of a bankruptcy court to expedite bankruptcy reorganization proceedings for they are frequently protracted. 'The need for expedition, however, is not a justification for abandoning proper standards.'") (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 450 (1968)).

Congress and the U.S. Supreme Court are clear: The Bankruptcy Code's procedures and protections matter, and neither expediency nor convenience are a

11

reason to bypass them. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 471 (2017) (declining to "alter the balance struck by the [bankruptcy] statute," even in "rare cases"); *Norwest Bank*, 485 U.S. at 207 (explaining that courts cannot deviate from the procedures "specified by the [Bankruptcy] Code," even when they sincerely "believ[e] that . . . creditors would be better off").

### 2.     The Bankruptcy Court misapplied California law.

The Bankruptcy Court fundamentally misinterpreted and misapplied California law. GIPA is a straightforward statute that, relevant here, prohibits the transfer and disclosure of genetic data or biological samples to third parties without the "express consent" of affected consumers:

> To safeguard the privacy, confidentiality, security, and integrity of a consumer's genetic data, a direct-to-consumer genetic testing company shall . . . [o]btain a consumer's express consent for collection, use, and disclosure of the consumer's genetic data, including, at a minimum, separate and express consent for . . . [e]ach transfer or disclosure of the consumer's genetic data or biological sample to a third party other than to a service provider, including the name of the third party to which the consumer's genetic data or biological sample will be transferred or disclosed.

Cal. Civ. Code § 56.181.

There can be no serious dispute that the entire point of Debtors' transaction is to transfer genetic data and biological samples from Debtors to TTAM—unquestionably, a third party. Despite this, the Bankruptcy Court held that the approved transaction did not trigger GIPA's express-consent transfer restrictions

because the transaction, although a transfer, was not to a "third party." To accomplish this, the Bankruptcy Court read in an extra-textual, "implicit" exception to GIPA, permitting the transfer of disclosure of genetic data to affiliates and subsidiaries.[2] [Op. at 22–24.] This was legal error.

"If the language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls." *People v. Hudson* 38 Cal. 4th 1002, 1009 (2006). Here, there is no statutory ambiguity in GIPA. California subscribes to the "separate entity theory," in which "corporations, partnerships, joint ventures, and associations have an identity apart from that of the owners." *Kraft, Inc. v. County of Orange*, 219 Cal. App. 3d 1104, 1109 (1990). Accordingly, corporate affiliates and subsidiaries must necessarily be considered "third parties" under California law. This reading of GIPA further comports with California's canon that courts "must construe consumer protection statutes liberally so as to accomplish their remedial purpose." *BBBB Bonding Corp. v. Caldwell*, 73 Cal. App. 5th 349, 365 (2021). Here, the most consumer-protective reading is the correct one. Accordingly, "third party" must be given its broadest meaning,

---

[2] On this point, the Bankruptcy Court relied exclusively on a lone, unpublished bankruptcy decision, *In re Wesco Aircraft Holdings, Inc.*, No. 23-90611, 2025 WL 354858 (Bankr. S.D. Tex. Jan. 15, 2025). [Op. at 25.] This decision is inapposite. It does not purport to interpret or apply California law—rather, the court construed the term "third party" as used in a bespoke note indenture between two private parties.

Appellate Case: 25-2361     Page: 19     Date Filed: 07/11/2025 Entry ID: 5536222

necessarily encompassing subsidiaries and affiliates, this means that both NewCo and TTAM are "third part[ies]" under GIPA. It was legal error for the Bankruptcy Court to read an "implicit" exception into GIPA.

Any argument that the contrived sale of equity rather than assets somehow permits the evasion of GIPA "would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose." *Gregory v. Helvering*, 293 U.S. 465, 470 (1935). The Bankruptcy Court's interpretive error will have far reaching ramification that will hurt California consumers depriving them of the protections of GIPA. The Court's analysis of GIPA provides a blueprint for *every* genetic-testing company subject to GIPA—whether inside or outside bankruptcy—to evade GIPA's transfer restrictions by simply forming a subsidiary, transferring the genetic assets to that subsidiary, and then selling the subsidiary's equity—*to any third party*. It is inconceivable that that the California legislature intended such a gaping loophole in GIPA. *See United Farm Workers of Am., AFL-CIO v. Dutra Farms*, 83 Cal. App. 4th 1146, 1156 (2000) (rejecting statutory "interpretation [that] creates a loophole that greatly undermines the strength of the statute"); *see also, e.g.*, *Fox Valley & W. Ltd. v. I.C.C.*, 15 F.3d 641, 645 (7th Cir. 1994) (cautioning against "obvious loopholes opened by the manipulation of corporate forms," otherwise "the statute will be quickly nullified by clever lawyers").

For these reasons, the People have a likelihood of success on the merits.

## B. Irreparable injury if the stay is denied.

Absent a stay, the People face irreparable harms to its sovereign interest, quasi-sovereign interest, and appellate rights.

### 1. Irreparable Harm to California's Sovereign Interest

The States have a sovereign interest in their "power to create and enforce a legal code, both civil and criminal . . . ." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982). The Bankruptcy Court's Sale Order is presently and immediately interfering with the People's authority to enforce its code, GIPA. GIPA ensures that California residents are protected and empowered by the opportunity to affirmatively opt-in to a transfer of disclosure of their most personal sensitive data. GIPA is a consumer-protection privacy law. The Bankruptcy Court has manifestly frustrated this state-law privacy protection, depriving California residents of the benefits of state law. If this sale were occurring outside the bankruptcy, the People could and would exercise its law-enforcement authority to regulate it.[3] Because of the Bankruptcy Court's Sale

---

[3] The Bankruptcy Court's order has further ramifications that grossly frustrates the People's law-enforcement authority. For example, but for the order, TTAM would be in "wrongful" possession of vast amounts of California consumers' genetic data

Order, the People are prevented from doing so. This irreparably harms California's sovereign interest as a matter of law. *See, e.g.*, *See, e.g.*, *Abbott v. Perez*, 585 U.S. 579, 603 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State . . . ."); *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) ("Prohibiting the State from enforcing a statute properly passed . . . would irreparably harm the State.").

### 2. Irreparable Harm to California's Quasi-Sovereign Interest

Similarly, States have a quasi-sovereign interest "in the health and well-being—both physical and economic—of its residents in general." *Snapp*, 458 U.S. at 593. As discussed, California enacted GIPA to protect its residents. Nearly two million California residents are presently being denied that protection under state law. Indeed, the Bankruptcy Court specifically found that its order would harm 23andMe customers:

> Some subset of customers probably would prefer not to do business with TTAM but are not in a position to opt out by deleting their accounts. This may be because they no longer have access to their login credentials, because they are deceased, because they ignore email messages, or for some other reason.

[Op. at 18.]

This harm is irreparable. Once genetic data is wrongfully disclosed it cannot

---

and biological samples and thus holding those assets in constructive trust under California law. Cal. Civ. Code §§ 2223, 2224.

Appellate Case: 25-2361    Page: 22    Date Filed: 07/11/2025 Entry ID: 5536222

be un-disclosed. Accordingly, the Bankruptcy Court's order irreparably harms California quasi-sovereign interest in the health and well-being of its residents.

### 3. Irreparable to the People's Appellate Rights

Debtors are no doubt rushing to close this sale, in part, to get the benefits of statutory mootness under § 363(m) of the Bankruptcy Code. Courts have held that the government's loss of appellate rights is itself a form of irreparable harm. *See, e.g.*, *In re St. Johnsbury Trucking Co., Inc.*, 185 B.R. 687, 690 (S.D.N.Y. 1995) ("[T]the government is correct that there is a risk that its appeal will be mooted absent a stay, and there is nothing either side can do about that. The government thus is threatened with irreparable injury.").

Accordingly, these three bases for irreparable harm, on their own or together, are sufficient as a matter of law to satisfy the second prong of the stay factors.

### C. Weighing the public interest and assessing harm to interested parties.

The public interest will be served by granting a stay. "[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989).

Here, "it is in the public interest to uphold the will of the people, as

17

expressed by acts of the state legislature . . . ." *Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 909 (8th Cir. 2020); *cf. FTC v. Mallett*, 818 F. Supp. 2d 142, 149 (D.D.C. 2011) ("public interest in ensuring the enforcement of federal consumer protection laws is strong"). Accordingly, allowing the People to vindicate California's sovereign and quasi-sovereign interests is manifestly in the public interest. Moreover, clearing the way of appellees' mootness arguments so that the government can exercise its appellate rights is also in the public interest. *See In re Voyager Digital Holdings, Inc.*, No. 23-02171, 2023 WL 2731737, at *10 (S.D.N.Y. Apr. 1, 2023) (holding that government's "risk of mootness in the absence of a stay satisfies [the public-interest] prong").

For their part, Debtors and TTAM raise a host of harms that will befall them if a stay is granted. They point to a number of transaction deal terms that, for example, allow TTAM to walk away from the purchase or allow Debtors' secured "DIP" lender to foreclose. But these are all private agreements to which affected parties voluntarily entered. That Debtors are now pot committed to a course of action that runs roughshod over state-law privacy protections is entirely a problem of their own making. Debtors also maintain that they could accomplish the sale though a Chapter 11 plan—perhaps, but no one can pre-determine whether that plan would be confirmable or comply with the Bankruptcy Code's creditors safeguards until and unless Debtors propose it. As for TTAM, they have no

inherent right to purchase assets from a bankruptcy estate, and certainly TTAM has no right to do so in violation of state privacy laws, like GIPA. Debtors also point to supposed "privacy enhancements" that California consumers will receive as a result of the sale. However, these "enhancements" are at best co-extensive but mostly fall short of the protections already provided by California's robust privacy laws.[4]

### D.  An appellate bond would be unnecessary and inappropriate.

Federal Rule of Bankruptcy Procedure 8007 does not mandate a bond. Fed. R. Bankr. P. 8007; *see, e.g.*, *In re Sindesmos Hellinikes-Kinotitos of Chicago*, 607 B.R. 898, 913 (Bankr. N.D. Ill. 2019) ("bonds on stays pending bankruptcy appeals are discretionary). In dicta, the Bankruptcy Court has suggested that a significant bond might be appropriate if it had granted a stay. The People respectfully disagree.

"Principles of state sovereignty and federalism are entitled to considerable weight in an analysis of the factors relevant to the need for a supersedeas bond." *Easter House v. State of Ill. Dep't of Child. & Fam. Servs.*, 645 F. Supp. 107, 108 (N.D. Ill. 1986). Here, the People are acting in the public interest, to protect

---

[4] For example, Debtors tout that TTAM will permit consumers to delete their genomic data "in perpetuity." But that is already required by GIPA. Cal. Civ. Code § 56.181(d)(2)(B).

affected California consumers and vindicate the State's sovereign and quasi-sovereign interests. A bond here would be neither necessary nor appropriate.[5] *See, e.g.*, *Richland/Wilkin Joint Powers Auth.*, 826 F.3d at 1043 (permissible for the district court to waive the bond requirement based on its evaluation of public interest).

---

[5] Moreover, this appeal is not from a monetary judgment—thus, the appellee's risk of being unable to collect on its judgment is not at stake. *See Easter House*, 607 B.R. at 913.

Appellate Case: 25-2361    Page: 26    Date Filed: 07/11/2025 Entry ID: 5536222

## VI. CONCLUSION

For the foregoing reasons, the People request that this Court grant the motion and stay the transfer of identifiable California consumer biological samples and genetic data.

Dated: July 11, 2025

Respectfully submitted,

Rob Bonta
Attorney General
Nicklas A. Akers #211222(CA)
Senior Assistant Attorney General

*/s/ Daniel M.B. Nadal*

Bernard A. Eskandari #244395(CA)
Daniel M.B. Nadal #299661(CA)

Attorneys for The People of the State of California

Deputy Attorneys General
CALIFORNIA DEPARTMENT OF JUSTICE
455 Golden Gate Ave., Ste. 11000
San Francisco, California 94102
Telephone:  (415) 510-3497
Facsimile:  (916) 731-2146
Email:      bernard.eskandari@doj.ca.gov
            daniel.nadal@doj.ca.gov

Appellate Case: 25-2361    Page: 27    Date Filed: 07/11/2025 Entry ID: 5536222

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.     This document complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

        ☑     this document contains 4,775 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

        ☑     this document has been prepared in a proportionally spaced typeface using **Microsoft® Word for Microsoft 365 MSO (Version 2408 Build 16.0.17928.20336) 64-bit** in size 14 Times New Roman.

Signature          /s/ Daniel M.B. Nadal

                                             Date: July 11, 2025

Appellate Case: 25-2361    Page: 28    Date Filed: 07/11/2025 Entry ID: 5536222

**Certificate of Service**

I hereby certify that on July 11, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. Upon receiving a file-stamped copy of the filing, I will promptly transmit a copy by e-mail to the following non-CM/ECF Participants:

- Counsel for TTAM Research Institute.


/s/ Daniel M.B. Nadalt
An Attorney for the People of the State of California