Case No. 25-2361

# In The United States Court of Appeals for the Eighth Circuit

THE PEOPLE OF THE STATE OF CALIFORNIA,

*Appellant,*

v.

23ANDME HOLDING CO.,

*Appellee*

---

On appeal from the U.S. District Court for the Eastern District of Missouri
–
Case No. 4:25-cv-00999-MTS

---

## OPPOSITION OF INTERESTED PARTY TTAM RESEARCH INSTITUTE TO AN ADMINISTRATIVE STAY

---

After a failed attempt to block this $305 million sale before the bankruptcy court, a failed request to the bankruptcy court to stay its order, and a failed appeal to the district court to enter a stay pending appeal, the State of California now asks this Court for a fourth bite at the apple on its meritless argument. In doing so, it follows a familiar

playbook: rehash the same tired (and now thrice rejected) arguments on harm and the merits, add a few new (and unvetted) alleged facts not previously in the record, and then delay until the last possible moment (while claiming an emergency) to bully the Court into granting a temporary pause.

The Court should not countenance a *fourth* temporary stay—the bankruptcy court and district court have granted three combined. The arguments in California's motion (to the extent they are not new and wholly unsupported by anything in the record) are meritless, the state lacks standing to appeal, *and* the harm from a stay is significant—but only to the Debtors in this case, not to California. If allowed to intervene, TTAM will respond on the merits to California's request for a stay pending appeal. TTAM files this short opposition now to highlight the urgency of *denying* any temporary relief (in the form of an administrative stay) pending consideration of that stay request.

## BACKGROUND

On Friday, June 27, 2025, Judge Walsh approved the $305 million sale of Debtor 23andMe Holding Co. ("23andMe" and, together with certain of its subsidiaries, the "Debtors") to TTAM Research Institute

("TTAM") pursuant to Bankruptcy Code Section 363. This sale, if consummated, is expected to repay creditors in full and a distribution made to the Debtors' shareholders (the rare bankruptcy success story). Judge Walsh entered his order on the merits after a robust two day hearing, then stayed the relief granted with respect to closing the transaction for ten days, through July 7, so that any objecting party could appeal.

On the evening of July 4, 2025, with the stay set to expire on the next business day, California sought a further stay with the Bankruptcy Court. Judge Walsh held a hearing on July 7, the next business day, and denied California's request because California raised all the same issues he had already rejected on the merits *and*, pursuant to the bankruptcy rules' plain text, California likely lacked any appellate standing to pursue an appeal. *See* Fed. R. Bankr. P. 2018(b) (state attorneys general lack appellate standing when objecting on behalf of consumer creditors, as California does); July 7 Hr'g Tr. at 76:23-24[1] (same). Judge Walsh held that California did not carry its burden on any of the four stay

---

[1] Copies of the relevant transcripts are attached to the motion filed by California and the Opposition filed by the Debtors. To avoid over-burdening the Court with additional duplicate copies, TTAM does not attach them again here.

3

factors. *See* July 7 Hr'g Tr. at 76:6-81:2 (discussing each factor and finding California carried its burden on none of them).

Later that evening, California ran to the District Court and sought an emergency stay from Judge Schelp. Judge Schelp issued an administrative stay and held a hearing days later, on July 10. Having reviewed the briefs and the decision below, and after hearing from the parties, Judge Schelp agreed with the Bankruptcy Court, held that California met none of the four stay factors, and indicated he would temporarily stay the closing of the transaction through 11:59pm on July 11 to allow California to attempt an appeal. *See* July 10 Hr'g. Tr. at 43:23-46:15 (discussing each factor and finding California carries burden on none of them).

## STANDARD OF REVIEW

Although there is no uniform standard, an administrative stay temporarily pauses proceedings for the Court to consider a lengthier stay pending appeal, so the traditional stay factors—the "most critical" of which are likelihood of success on the merits and irreparable injury—generally apply. *See Brakebill v. Jaeger*, 905 F.3d 553, 557 (8th Cir. 2018). A movant seeking a stay must show a clear probability, not a

Appellate Case: 25-2361     Page: 4     Date Filed: 07/11/2025 Entry ID: 5536314

"mere possibility" of relief or irreparable injury. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Entry of a stay is never a matter of right. *Nken*, 555 U.S. at 433. An administrative stay is generally appropriate only in "emergency situations." *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, No. 14-CV-3103 SRN/FLN, 2015 WL 3559273, at *16 (D. Minn. May 27, 2015).

On the merits of the bankruptcy court's decision to approve the sale, the district court (and this Court) apply an abuse of discretion standard. *See* July 10 Hr'g Tr. at 43:1-6 ("[T]he applicable standard of review here is abuse of discretion. That's consistent with *In re Stratford Hotel*, 120 B.R. 515 (E.D. Mo. 1990). And that - - because of that, I reviewed the legal conclusions de novo and the factual conclusions for clear error."); *see also In re Peabody Energy Corp.*, 958 F.3d 717, 721 (8th Cir. 2020) ("When the case comes to us, as the second court of appellate review, we conduct an independent review of the bankruptcy court's judgment applying the same standards of review as the district court.'" (cleaned up)).

## ARGUMENT

Here, where California has failed to convince multiple courts of a single stay factor in its favor, and where even a temporary administrative

5

stay is highly prejudicial to TTAM, the Debtors, and other interested parties in these Bankruptcy Cases, the Court should not grant further relief. California has had its day(s) in court—at the sale hearing and two separate stay hearings. Each time a court dives into the merits of their argument, it rejects them. As both Judge Walsh and Judge Schelp held, California does not meet any of the stay factors. This Court should exercise its discretion to let the administrative stay dissolve and allow the sale to close for four reasons.

*First,* California lacks appellate standing, as Judge Walsh and Judge Schelp found. *See* July 10 Hr'g Tr. at 43:23-44:6 and July 7 Hr'g Tr. at 76:8-24 (lack of pecuniary interest and Bankruptcy Rule 2018(b) preclude standing). The bankruptcy rules are clear: A state may appear and be heard in bankruptcy court to represent the interests of its citizens, but *it may not appeal. See* Fed. R. Bankr. P. 2018(b). California addresses its standing in passing in a footnote. *See* Mot. at 8 n.1. Their assertions are conclusory. *See id.* (California claiming their standing is "well established" and "indisputable."). Judge Schelp and Judge Walsh, who actually analyzed the question, disagreed. And conclusory statements are not enough to meet the high bar required *of California* to

6

establish its own standing. Their own brief is rife with references to their interest *on behalf of California consumers*. That has nothing to do with any interest as a creditor—a newfound and late-breaking claim to standing on appeal.

*Second*, the basis of California's claim is that its Genetic Information Privacy Act ("GIPA") can operate to block this sale, but that is wrong according to the plain text of the statute and as a matter of basic statutory construction. *See* July 10 Hr'g Tr. at 44:7-13.

*Third*, there is significant injury here—but not to California. As Judge Schelp stated, "there will likely be no harm to California at all." *Id.* at 44:23-24; *see also* July 7 Hr'g Tr. at 78:2-10 (Bankruptcy Court holding that because California residents retain the ability to delete account information, any injury is not irreparable). As to substantial harm to other parties, Judge Schelp again: "I find that a stay unquestionably would injure the other parties interested in the proceeding, and that injury far outweighs any harm to the movants." *Id.* at 45:19-22; *see also* July 7 Hr'g. Tr. at 79:20-25 (Bankruptcy Court holds this factor "weighs heavily against granting a stay").

7

There is, instead, significant real-world cost (in dollars and employee morale) as California drags this process out. It is part of the Bankruptcy Court record that until the sale closes, the estates spend between $7 and $10 million in monthly administrative expenses. Under the Bankruptcy Code, these expenses have priority and dilute recoveries to creditor and equity constituencies. *See* July 7 Hr'g Tr. at 70:24-71:22, 79:25-80:5 (witness testimony concerning cost expectations if sale does not close and estate expenses continue through September, which Bankruptcy Court accepted). Therefore, every day this administrative stay is in place costs the estates approximately $233K-$333K, an amount that California has not bonded and has shown neither interest nor ability to bond. *See* July 7 Hr'g. Tr. at 20:3-4 (Mr. Eskandari: we also maintain that no bond is appropriate).

Moreover, the employees at 23andMe have been through significant upheaval over the last several months and deserve finality and the opportunity to continue on with their careers without the overhang of constant fits and starts that come with each additional administrative stay. In just the last few months, employees have dealt with the upheaval of a Chapter 11 filing, two auction processes that eventually

8

saw TTAM top a prior announced winning bidder, and now multiple efforts to close the sale have been stymied by the repeated stays. These employees – who TTAM has agreed to retain post-closing – deserve closure of the sale to continue with their professional lives.

*Fourth*, as to the final factor, public interest, Judge Schelp explained that the public interest weighs in favor of promoting what the bankruptcy code demands, namely, a just *and swift* resolution: "[T]he public interest favors . . . the expedient administration of bankruptcy proceedings . . . . Because I find that none of the [other] three factors support a stay, I find that granting one in this matter would frustrate the public interest rather than preserve it." July 10 Hr'g Tr. at 46:1-15; *see also* July 7 Hr'g. Tr. at 80:21-81:2 (Bankruptcy Court holding that "the public interest, I believe, favors the consummation of a thoroughly vetted and litigated transaction that's about to close and that includes substantial consumer protections.").

California's actions are antithetical to the very goals of chapter 11— the just and speedy administration of a debtor's estate. To that end, Federal Rule of Bankruptcy Procedure 1001(a) mandates that the rules be construed, administered, and employed by both the court and the

9

parties to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001(a); *see also Taggart v. Lorenzen*, 587 U.S. 554 (2019) (the "chief purpose of the bankruptcy laws" is "to secure a prompt and effectual resolution of bankruptcy cases within a limited period" (internal citations omitted)).

The Debtors and TTAM stand ready to accomplish a major milestone in these cases—the sale of the Debtors to TTAM for $305 million. The sale is supported by every major economic stakeholder of the Debtors. Although the bankruptcy proceeding began with more than 30 states raising privacy challenges to the sale, California is the only state remaining—the others' have fallen away in recognition of the fact that this sale would *increase*, rather than decrease, privacy protections for 23andMe customers. California has repeatedly tried (and failed) to thwart the speedy resolution of this milestone by filing stay request after stay request on the same losing arguments. Every day that the administrative stay remains in place, is a day longer that the Debtors must languish in Chapter 11. California must not be permitted to continue to serve as a roadblock, without justification, to the "prompt and effectual resolution" of the Debtors' cases.

## CONCLUSION

There is no ongoing emergency. California has already frustrated this sale through multiple days in multiple courts by last minute motions practice. The Debtors, TTAM, 23andMe employees, creditors, equity holders, and other estate constituencies deserve the finality that the Congress through the Bankruptcy Code grants in these bankruptcy sale situations. The administrative stay should dissolve, no further stay should be granted, and the sale be allowed to close.

Date: July 11, 2025                    Respectfully submitted,

By: */s/ Barbara A. Smith*
Barbara A. Smith
David M. Unseth
Katie Spewak
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2367
barbara.smith@bclplaw.com
david.unseth@bclplaw.com
katie.spewak@bclplaw.com

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Joseph O. Larkin (admission application forthcoming)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Susheel Kirpalani (admission application forthcoming)
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
susheelkirpalani@quinnemanuel.com

*Attorneys for Interested Party TTAM Research Institute*

12

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because it contains 1,979 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word version 2504 in 14 point Century Schoolbook font.

3. I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

*/s/ Barbara A. Smith*
Barbara A. Smith
Date: July 11, 2025

# CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Barbara A. Smith*
Barbara A. Smith
*Attorney for TTAM Research Institute*
